UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROCK MATHIS; MICHELLE MATHIS,<br><br>Plaintiffs,<br><br>v.<br><br>MILGARD MANUFACTURING, INC.,<br><br>Defendant. | Case No.: 3:16-cv-02914-BEN-JLB<br><br>**ORDER:**<br><br>**(1) DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY;**<br><br>**(2) GRANTING PLAINTIFFS' EX PARTE MOTION TO FILE SUR-REPLY; and**<br><br>**(3) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Plaintiffs Brock Mathis and Michelle Mathis[1] bring this products liability action to recover damages arising out of injuries Mr. Mathis sustained during an accident

---

[1] The Court shall individually refer to Brock Mathis as "Mr. Mathis" and Michelle Mathis as "Mrs. Mathis."

involving the failed installation of an "Ultra Fiberglass 123" x 60" clear tampered [sic] window" (hereinafter "the Subject Window") manufactured by Defendant Milgard Manufacturing, Inc. ("Milgard"). (Docket No. 1-2, Compl. at p. 5.)[2] Plaintiffs assert Milgard is liable for Mr. Mathis's injuries under California state-law theories of strict liability, negligence, and breach of implied warranty, as well as Mrs. Mathis's alleged resulting loss of consortium.

## PROCEDURAL HISTORY

On November 30, 2016, Defendant removed Plaintiffs' lawsuit from the Superior Court of California to this Court. (Docket No. 1.) Now pending is Defendant's motion for summary judgment, or in the alternative, partial summary judgment.[3] (Docket No. 36.) The motion is fully briefed.[4] For the reasons that follow, Defendant's motion is **GRANTED in part and DENIED in part**.

## BACKGROUND[5]

Mr. Mathis is the owner of BPM Builders, Inc. ("BPM"). (Docket No. 36-11, Def.'s Notice of Lodgment in Supp. of Mot. for Summ. J. ("DNOL"), Ex. G, Dep. of

---

[2] Except for the excerpts of deposition testimony, the Court's reference to page numbers shall be to the page number generated by the CM/ECF system.

[3] In conjunction with its motion for summary judgment, Defendant filed a motion in limine to exclude the testimony of Plaintiffs' expert witness, David Rondinone, Ph.D. ("Dr. Rondinone"). (Docket No. 37.) The motion is fully briefed. Based on the Court's review of the parties' briefings, it appears Dr. Rondinone's testimony is admissible for purposes of evaluating Defendant's motion for summary judgment. Therefore, Defendant's motion in limine to exclude Dr. Rondinone's testimony is **DENIED without prejudice** to re-raising the issue of admissibility at trial.

[4] Plaintiffs' filed an ex parte motion to file a sur-reply, to which Defendant objected. (*See* Docket Nos. 52-54, 56.) Because the Court finds the interests of justice and judicial economy favor consideration of Plaintiffs' sur-reply, Defendant's objections are **OVERRULED**, and Plaintiffs' ex parte motion is **GRANTED**. Fed. R. Civ. P. 1.

[5] The Court's reference to certain pieces of evidence is not an indication that it is the only pertinent evidence relied on or considered by the Court. The Court has reviewed and considered all the admissible evidence submitted by the parties.

Brock Mathis ("Mathis Dep.") at pp. 29:15-18, 31:11-18.) Since 2002, Mr. Mathis has been a California licensed general contractor, either individually or through BPM. (*Id.* at pp. 29:4-30:1, 31:2-4.) For the past four years, BPM's business has primarily involved upscale residential remodeling construction. (*Id.* at pp. 3:5-23, 50:20-51:3.)

On April 18, 2016, Mr. Mathis authorized BPM's purchase of the Subject Window from a Dixieline Lumber Co. sales representative. (*Id.* at pp. 40:11-18, 51:16-52:21 & Mathis Dep. Ex. 4.) The Subject Window was intended to be installed on the second floor addition as part of a remodel of Mr. Mathis's father's home, which also served, and continues to serve, as Plaintiffs' present residence and BPM's address. (Mathis Dep. at pp. 7:21-24, 31:19-25, 34:3-39:4.)

On May 31, 2016, Mr. Mathis attempted to install the Subject Window with his two general laborer employees, Denis and Walter. (*Id.* at pp. 25: 6-2, 58:21-59:5.) In essence, Plaintiffs allege that during the attempted installation, the Subject Window frame bent, flexed, buckled and/or bowed such that it fell into the intended window opening, and its flanges folded, buckled, and/or got unintentionally locked into the opening, at which point the Subject Window became stuck. Ultimately, as Mr. Mathis, Denis, and Walter tried to dislodge the Subject Window, it swung back and knocked them off the scaffold they were standing on. (*Id.* at pp. 116:7-119:20, 136:2-24, 138:3-139:24; *see also* DNOL Ex. D, Mr. Mathis's Resp. to Interrog. No. 1; Ex. E, Mr. Mathis's Supp. Resp. to Interrog. No. 1 ("The [Subject Window] was structurally unsound, did not maintain its form during installation resulting in its collapse, thereby pushing [Mr. Mathis] and this co-workers off the scaffold.").)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be

counted." *Id.* A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a summary judgment motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor. *Id*. at 255.

The moving party bears the initial burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.* The burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Id.* As a general rule, the "mere existence of a scintilla of evidence" will be insufficient to raise a genuine issue of material fact. *Anderson*, 477 U.S. at 252. There must be evidence on which the jury could reasonably find for the non-moving party. *Id.*

## DISCUSSION

### A. Products Liability Claims

In California, "[p]roducts liability may be premised upon a theory of design defect, manufacturing defect, or failure to warn." *Trejo v. Johnson & Johnson*, 13 Cal. App. 5th 110, 125 (2017) (citing *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 995 (1991)). Each of these theories in turn may be advanced under a theory of strict liability or negligence (or both), which require a plaintiff to prove that a defect caused the plaintiff's injury. *Id.*, 13 Cal. App. 5th at 125 (citations omitted in original).

A plaintiff seeking recovery for a manufacturing or design defect under a theory of negligence must also prove an additional element: "that the defect in the product was due to negligence of the defendant." *Id.* (quoting *Anderson*, 53 Cal. 3d at 995-96) (internal citations omitted in original). However, this additional element is not required in the context of a failure to warn claim, where "there is little functional difference between the two theories." *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 71-72 (2008) (citing Cupp & Polage, *The Rhetoric of Strict Products Liability Versus Negligence: An Empirical*

4

*Analysis*, 77 N.Y.U. L.Rev. 874 (2002)) ("[noting there is little substantive distinction between negligence and strict liability causes of action in the failure to warn context].").

Defendant's motion argues summary judgment is appropriate under any theory of products liability. As will be discussed in further detail below, the Court has considered each of Plaintiffs' potential[6] claims and, with the exception of a manufacturing defect claim, the Court disagrees.

### 1. Manufacturing Defect

Under California law, "[a] product has a manufacturing defect if it differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Garrett v. Howmedica Osteonics Corp.*, 214 Cal. App. 4th 173, 190 (2013) (citing *Barker v. Lull Eng'g Co.,* 20 Cal. 3d 413, 429 (1978). "In other words, a product has a manufacturing defect if the product as manufactured does not conform to the manufacturer's design." *Id.* at 190 (citing *In re Coordinated Latex Glove Litig.*, 99 Cal. App. 4th 594, 607 (2002)).

Defendant argues it is entitled to summary judgment on this claim because "there is no dispute that Summary Judgment on any alleged manufacturing defect should be granted." (Mot. at p. 11.) To support its argument, Defendant offers evidence that Plaintiffs only seek to advance their claims under "design defect" and "failure to warn" theories. (*See* DNOL, Ex. D, Mr. Mathis's Resp. to Interrog. No. 1; Ex. E, Mr. Mathis's Supp. Resp. to Interrog. No. 1.) Additionally, Defendant submitted an excerpt from the deposition testimony of Plaintiffs' expert witness, Dr. Rondinone, wherein Dr. Rondinone testified that he would not be offering an opinion that the Subject Window

---

[6] Plaintiffs' Complaint consists of a "form complaint" approved by the Judicial Council of California. (*See* Docket No. 1-2.) Due to the brevity of the Complaint's factual allegations, the Court construes Plaintiffs' pleading as seeking recovery under all potential theories. Therefore, the Court's analysis of Defendant's summary judgment motion considers whether there is a genuine issue of material fact based on the admissible evidence submitted by the parties in support of their respective positions.

"was not built as it was designed to be built." (*See* DNOL, Ex. J, Dep. of David Rondinone ("Rondinone Dep.") at p. 141:2-6.)

Plaintiffs' opposition did not respond to Defendant's arguments or otherwise argue the viability of a manufacturing defect claim.[7] The Court concludes that Plaintiffs concede Defendant is entitled to summary judgment on this claim. Moreover, because it appears to the Court that there is no triable issue of material fact, Defendant's motion for summary judgment on Plaintiffs' manufacturing defect claim is **GRANTED**.

### 2. Design Defect

California law permits a plaintiff to prove a product's design defect "under either of two alternative tests – the consumer expectations test or the risk-benefit test." *Demara v. Raymond Corp.*, 13 Cal. App. 5th 545, 553 (2017) (citing *Barker*, 20 Cal. 3d at 418, 432, 435) (emphasis in original omitted). Under the consumer expectations test, a product is defective in design "if the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Garrett*, 214 Cal. App. 4th at 182 (citing *Barker*, 20 Cal. 3d at 418). Under the risk-benefit test, a product is defective in design "if the benefits of the design do not outweigh the risk of danger inherent in the design." *Id.*

The tests are not mutually exclusive; "depending on the facts and circumstances of the case, both may be presented to the trier of fact in the same case." *Demara*, 13 Cal. App. 5th at 554 (citing *Saller v. Crown Cork & Seal Co., Inc.*, 187 Cal. App. 4th 1220, 1232 (2010); *Barker*, 20 Cal. 3d at 418, 430, 435). Both tests require a plaintiff to establish that "the product's failure to perform safely was a substantial factor in causing" the plaintiff's alleged harm. *Id.*, 13 Cal. App. 5th at 554. "A substantial factor in causing

---

[7] Notably, although Plaintiffs' sur-reply disputes Defendant's argument that they conceded the applicability of the consumer expectations test, which will be discussed, *infra*, it does not dispute Defendant's contention that Plaintiffs impliedly concede summary judgment should be granted on the manufacturing defect claim. (*See* Docket No. 52.)

6

3:16-cv-02914-BEN-JLB

harm is a factor that a reasonable person would consider to have contributed to the harm." It must be more than a remote or trivial factor. It does not have to be the only cause of the harm." *Id.* at 554-55 (quoting CACI No. 430).

### i. Consumer Expectations Test

Defendant argues the consumer expectations test is not applicable to the facts of Plaintiffs' case because the asserted design defect, *i.e.*, that the Subject Window was structurally unsound, "does not involve minimum safety standards a consumer might expect." (Mot. at p. 13.) Defendant contends, without citing to any authority, that an ordinary consumer's experience is limited to "installed window products," not windows in their "uninstalled state." (*Id.*) As a result, Defendant argues, "the ordinary consumer cannot reasonably form minimum safety expectations about the degree of rigidity an uninstalled window should have," and the Court should decline to find the test applicable to this case. (*Id.*)

Curiously, the only evidence Defendant cites to support its conclusion is Dr. Rondinone's testimony, which it unsuccessfully moved to exclude. (*See* Mot. at p. 13.) Defendant suggests that because Dr. Rondinone testified that "absolute rigidity is not possible," it follows that "flexibility is not a per se defect and the degree of flexibility to which a pre-installed window is susceptible is not a subject on which an ordinary consumer can form minimum safety expectations." (*Id.*) (citing DNOL, Ex. J, Rondinone Dep. at p. 109:10-14.) However, it is not clear to the Court how acknowledging that "absolute rigidity is not possible" prevents an ordinary consumer from forming minimum safety expectations about the Subject Window or other similar windows. Additionally, based on Plaintiffs' Complaint and the submitted discovery responses, it is not clear to the Court that Plaintiffs' design defect claim is ultimately based on the Subject Window's lack of "absolute rigidity."

In short, the Court is unpersuaded by Defendant's conclusory assumptions about the ordinary consumer's experience with window products similar to the Subject Window, and declines to find the consumer expectations test inapplicable to this case.

7

Since Defendant did not offer any alternative argument or evidence as to why it is entitled to summary judgment even if the consumer expectations test applied, the Court need not resolve this question.

        ii.        Risk-Benefit Test

Defendant further argues that it is entitled to summary judgment on Plaintiffs' design defect claim because Plaintiffs cannot establish a genuine issue of material fact that the Subject Window is defectively designed. Defendant's argument primarily relies on its assumption that Dr. Rondinone's testimony and expert report would be excluded. However, as discussed above, the Court concluded this evidence is admissible. Thus, it appears a genuine issue of material fact exists because Defendant represents that Dr. Rondinone opines that the Subject Window "was defective in design because it 'was sufficiently flexible to allow it to bend in a manner that was unsafe,'" and that "the design of the Subject Window was a cause of [Mr. Mathis's] injury." (Mot. at p. 15) (citing DNOL, Ex. F, Dr. Rondinone's Expert Report at p. 7.) Accordingly, Defendants' motion for summary judgment on Plaintiffs' design defect claim must be **DENIED**.

    **3.    Failure to Warn**

Defendant's motion for summary judgment as to Plaintiffs' failure to warn claim also fails. First, Defendant again relies on its assumption that Dr. Rondinone's testimony and report are inadmissible. But as Defendant acknowledges, Dr. Rondinone's opinions create a genuine issue of material fact as to whether Defendant should have warned Plaintiffs of the risk, harm, or danger created by the Subject Window. (*See* Mot. at p. 21 ) ("Dr. Rondinone opines that there were no specific instructions provided to the installer on the required support of the Subject Window during installation and that there were no warnings that the Subject Window was sufficiently flexible to bend to an equivalent length shorter than the designed opening for the window.") (quoting DNOL, Ex. F. Dr. Rondinone's Expert Report at p. 7.)

Second, Defendant alternatively argues it is entitled to summary judgment because Mr. Mathis is a "sophisticated user," and thus barred from raising a failure to warn claim.

California law recognizes the "sophisticated user defense," whereby "[a] manufacturer is not liable to a sophisticated user of its product for failure to warn of a risk, harm, or danger, if the sophisticated user knew or should have known of that risk, harm, or danger." *Johnson*, *supra*, 43 Cal. 4th at 70-71. "[U]nder the sophisticated user defense, the inquiry focuses on whether the plaintiff knew, or should have known, of the particular risk of harm from the product giving rise to the injury." *Id.* at 71.

The Court is not persuaded that the sophisticated user defense applies. Defendant fails to provide any evidence to support its conclusion that Mr. Mathis is a "sophisticated user" such that he should be barred from recovery under a failure to warn theory. Notably, Defendant never identifies what "risk, harm, or danger" Plaintiff knew, or should have known. Rather, Defendant suggests that because Mr. Mathis testified that he "has 'a lot of experience' installing windows, including windows the size of the Subject Window" and "knows the proper installation of a window 'practically by heart,'" the Court should find he is a sophisticated user. However, Defendant does not offer any evidence to establish that a similar user would have been aware of the risk, harm, or danger Plaintiffs actually identify: that the Subject Window might not be sufficiently rigid such that it would bend in a manner that was unsafe.

In sum, because the Court finds Defendant has not met its burden to prove no triable issue of material fact exists, its motion for summary judgment on Plaintiffs' failure to warn claim is **DENIED**.

C.  **Breach of Implied Warranty Claim**

Next, Defendant moves for summary judgment on Plaintiffs' breach of implied warranty claim. Plaintiffs' did not respond to this issue.[8] The Court has reviewed the merits of Defendant's arguments and agrees that summary judgment is appropriate.

---

[8] Like the manufacturing defect claim, Plaintiffs' sur-reply does not dispute Defendant's contention that Plaintiffs impliedly concede summary judgment should be granted on their implied warranty claim. (*See* n.7, *supra*.)

California recognizes two types of implied warranties: (1) the Implied Warranty of Merchantability under California Commercial Code § 2314; and (2) the Implied Warranty for Fitness of Purpose under California Commercial Code § 2315. Plaintiffs' Complaint does not state whether their claim arises out of either or both of these sections. (*See* Docket No. 1-2 at p. 5.) In any event, both sections require that a plaintiff asserting breach of implied warranty stand in vertical contractual privity with the defendant. *See Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187, 1201 (2011) ("As a general rule, a cause of action for breach of implied [or express] warranty requires privity of contract; 'there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale.'") (quoting *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954); *accord*, *Arnold v. Dow Chem. Co.*, 91 Cal. App. 4th 698, 720 (2001)). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Osborne v. Subaru of Am. Inc.,* 198 Cal. App. 3d 646, 656 n.6 (1988)). "[A]n end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Id.*

Here, it is undisputed that Plaintiffs purchased the Subject Window from Dixieline Lumber Co., not Defendant. (Mathis Dep. at pp. 40:11-18, 51:16-52:11 & Mathis Dep. Ex. 4.) The Court's research indicates that there are exceptions to the privity rule, but none appear to apply to the facts of this case. *Clemens*, 534 F.3d at 1023 ("Some particularized exceptions to the rule exist. The first arises when the plaintiff relies on written labels or advertisements of a manufacturer . . . The other exceptions arise in special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser.") (citing California state-court cases). Nor do Plaintiffs offer any authority or arguments to support application of an exception. As a result, the Court concludes Plaintiffs have conceded the viability of this claim, and that there is no genuine issue of material fact in dispute that Plaintiffs do not stand in vertical contractual privity with Defendant. Therefore, Defendant's motion for summary judgment on Plaintiffs' claim for breach of implied warranty is **GRANTED**.

### D. Loss of Consortium Claim

Finally, Defendant's motion for summary judgment as to Mrs. Mathis's loss of consortium claim must be denied because it completely relies on the Court's grant of summary judgment as to each of Mr. Mathis's claims, which did not occur. (*See* Mot. at p. 22.)

### CONCLUSION

For all of the reasons stated above, Defendant's motion for summary judgment is **GRANTED** as to Plaintiffs' products liability claim under a manufacturing defect theory and breach of implied warranty claim. Defendant's motion for summary judgment is **DENIED** as to Plaintiffs' products liability claims (under both a design defect and a failure to warn theory), and loss of consortium claim.

**IT IS SO ORDERED.**

Dated: May 7, 2018

Hon. Roger T. Benitez
United States District Judge